■ In the Matter of KATHLEEN OO., a Child Alleged to be Permanently Neglected. SULLIVAN COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; KAREN OO., Appellant. [689 NYS2d 286] —Carpinello, J. Appeal from an order of the Family Court of Sullivan County (Meddaugh, J.), entered May 4, 1998, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to, *inter alia*, adjudicate Kathleen OO. a permanently neglected child, and terminated respondent's parental rights.

On May 7, 1994, then eight-year-old Kathleen OO. was placed in petitioner's custody as a result of allegations that she was sexually abused by both of her parents. On August 14, 1995, an order was entered adjudicating her to be abused, which was affirmed by this Court (*see, Matter of Kathleen OO.*, 232 AD2d 784). Although initially placed in a regular foster care setting, Kathleen was hospitalized for several weeks in the fall of 1996 as the result of severe emotional problems. Upon release, she was placed in a therapeutic foster care setting where she has remained ever since.

Respondent is Kathleen's mother and is mildly retarded (she has an IQ of 75). Pursuant to an order of Family Court, she is prohibited from having any contact whatsoever with Kathleen. In April 1995, respondent pleaded guilty to sexual abuse in the second degree and was discharged on the condition that she continue to cooperate with petitioner and the Community Resource Center in Sullivan County. Since Family Court's adjudication of abuse, she has regularly participated in counseling and therapy, maintained steady employment through the Community Resource Center and maintained a neat and clean apartment. Her success has not been without considerable input and assistance from petitioner and the Community Resource Center. Respondent has always expressed an interest in Kathleen's well-being and in reestablishing visitation. Moreover, according to Frank Brusinski, a certified social worker who has been counseling respondent since May 1996 with respect to her sexual offending behavior, respondent has been cooperative and worked to the best of her ability in therapy.

In this proceeding, respondent's parental rights were terminated on the ground that she permanently neglected the child (*see*, Social Services Law § 384-b [7]) and on the ground of mental retardation (*see*, Social Services Law § 384-b [4] [c]; [6] [b]).* Because the record supports Family Court's finding that respondent, by reason of mental retardation, is presently and for the foreseeable future unable to provide proper and adequate care for her daughter (*see*, Social Services Law § 384-b [4] [c]; *see, e.g.*, *Matter of Dale T.*, 236 AD2d 744) and that termination of respondent's parental rights is in Kathleen's best interest (*see*, *Matter of Joyce T.*, 65 NY2d 39; *compare*, *Matter of Michael E.*, 241 AD2d 635), we affirm its order. This being the case, we need not reach the more difficult question of whether petitioner also proved by clear and convincing evidence that respondent permanently neglected Kathleen.

According to the testimony of three mental health professionals involved in this case—Brusinski, Stephen Feffer, an applied behavioral science specialist who has been respondent's therapist since early 1995, and Erdogan Tekben, a court-ordered psychiatrist who evaluated respondent in November 1997 to ascertain her ability to care for Kathleen by reason of mental illness or retardation—respondent is mildly retarded, does not fully comprehend her sexually offending behavior or its effects on Kathleen and is unable to provide a safe environ-

---

* Kathleen's father is serving time in prison for sexually abusing her and has voluntarily surrendered his parental rights.

ment for her. Through these professionals, there was ample testimony that, although respondent is able to live independently and hold down a job, she relies quite heavily on the services provided to her by the Community Resource Center. In addition, although she might be able to perform the most elemental tasks required to care for Kathleen (i.e., provide food), respondent's cognitive limitations are such that she would be unable to perform more complex child-rearing tasks, particularly meeting the emotional demands of Kathleen, who has consistently been described as a "special needs" child and has resisted any relationship with respondent.

There was also ample testimony that Kathleen continues to suffer emotional problems as a result of being sexually abused and has no interest in reestablishing any relationship or visitation with respondent. According to Nancy Kirchner, Kathleen's therapist between June 1995 and October 1997, continued contact between Kathleen and respondent would be inappropriate inasmuch as it increased Kathleen's anxiety and precipitated severe emotional symptoms. Michelle Dietrich, Kathleen's therapist since August 1998, testified that Kathleen is terrified of her parents and wants no contact whatsoever with them. Given this unrefuted testimony, we are satisfied that petitioner proved by clear and convincing evidence that respondent's parental rights should have been terminated on the ground of mental retardation (see, Social Services Law § 384-b [4] [c]; [6] [b]; see also, Matter of Joyce T., 65 NY2d 39, supra; Matter of Dale T., 236 AD2d 744, supra; Matter of Karen Y., 156 AD2d 823, 824-825, lv denied 75 NY2d 710).

Cardona, P. J., Crew III, Peters and Graffeo, JJ., concur. Ordered that the order is affirmed, without costs.