Matter of Porter-Spaulding v Spaulding (2018 NY Slip Op 05642)





Matter of Porter-Spaulding v Spaulding


2018 NY Slip Op 05642


Decided on August 2, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 2, 2018

524164

[*1]In the Matter of SHANNON PORTER-SPAULDING, Respondent,
v
CHRIS H. SPAULDING, Respondent. ATTORNEY FOR THE CHILD, Appellant.

Calendar Date: June 6, 2018

Before: Devine, J.P., Clark, Rumsey and Pritzker, JJ.


Pamela Doyle Gee, Big Flats, attorney for the child, appellant.
Barton Smith & Barton LLP, Elmira (Christopher A. Barton of counsel), for Shannon Porter-Spaulding, respondent.



MEMORANDUM AND ORDER
Rumsey, J.
Appeal from an order of the Family Court of Chemung County (Rich Jr., J.), entered October 5, 2016, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the divorced parents of one child (born in 2009). The October 2015 judgment of divorce incorporated, but did not merge, the parties' stipulation that provided, among other things, for joint legal custody with primary physical custody to the mother and parenting time to the father, as relevant here, from Tuesday evening through Thursday morning each week. In 2016, the father filed a modification petition seeking sole custody, and the mother cross-petitioned to end the child's overnight stays with the father on school nights. Family Court granted the mother's motion to dismiss the father's petition and conducted a fact-finding hearing on the mother's cross petition. Family Court then held a Lincoln hearing and, concluding that the child's testimony had been coached, ordered a psychological evaluation of the child to be conducted by the court's appointed forensic evaluator. Upon receipt of the completed psychological evaluation, the court denied the relief sought in the cross petition, but directed, among other things, that neither parent [*2]shall make disparaging remarks about the other. The attorney for the child appeals.
A parent seeking to modify an existing custody order "bears the initial burden of showing a change in circumstances since entry thereof, and, upon satisfying this burden, [he or] she must then demonstrate that modification is in the child's best interests. Family Court is afforded broad discretion in fashioning an appropriate visitation schedule that promotes the child's best interests, and we will not disturb its determination unless it lacks a sound and substantial basis in the record" (Matter of Perry v Leblanc, 158 AD3d 1025, 1026 [2018] [citations omitted]).
The evidence revealed that the father's and the mother's households are very different. The mother and the child live alone in the former marital home and the mother provides a structured environment with an early bedtime. The father lives in a two-bedroom apartment attached to the home where his parents live with their 16-year-old grandson, the father's nephew. The father and the child share meals with the extended family. Although the child has her own bedroom, she sometimes has trouble falling asleep due to noise from other family members. At the father's home, the child has a puppy and a pet goat and enjoys riding an all-terrain vehicle.
The evidence also established that the father and the mother had an acrimonious relationship that adversely affected the child. The child's second-grade teacher testified that her academic performance began to decline after the custody arrangement went into effect and that the child had confided in her that the father and the paternal grandmother had disparaged the mother in the child's presence. A long-time friend of the mother, who resided with the mother for six months, testified that the child told her that the father stated that he hates the mother, had called the mother a liar and other derogatory names and told the child that she should live with him because he has a family and the mother does not. The father acknowledged that he told the child that he did not want to see the mother and conceded that the child may have overheard him refer to the mother as a liar. The attorney for the child agreed with the court-appointed psychologist that the child is aware of the conflict between her parents and that it causes her stress and anxiety. They both noted that the child is troubled by the father's negative comments about the mother and that she is strongly influenced by her mother. While advocating to end the child's overnight visitation with the father on school nights, the attorney for the child nevertheless expressed concern that a reduction in the father's parenting time and the concomitant increase in the time that the child spends with the mother would result in alienation from the father. The psychologist made no finding of alienation and concluded that his evaluation did not support modification of the custody arrangement.[FN1]
Although Family Court did not conduct the requisite threshold analysis, we may review the record and render an independent determination as to whether the parent seeking [*3]modification established a change in circumstances (see id. at 1027; Matter of Woodrow v Arnold, 149 AD3d 1354, 1356 [2017]). Based upon our independent review of the record, we conclude that the requisite change in circumstances was established by the child's declining academic performance and the testimony that the father and the paternal grandmother had disparaged the mother in the child's presence.
Turning to the best interests analysis, "[v]isitation with a noncustodial parent is presumed to be in a child's best interests and, because the denial of visitation is a drastic remedy, it may be ordered only in the presence of compelling reasons and substantial evidence that such visitations are detrimental to the child's welfare" (Matter of Perry v Leblanc, 158 AD3d at 1027 [internal quotation marks and citations omitted]). We conclude that the evidence does not support a finding that the conditions at the father's home during the midweek visitations had a significant detrimental effect on the child's welfare; rather, we find that the parents' acrimonious relationship is the primary factor negatively affecting the child. We further note that there is evidence that eliminating the father's midweek visitations would negatively impact the relationship between the father and the child, to the detriment of both. Upon consideration of the child's best interests, Family Court properly decided that it was "not changing the visitation schedule" — the only relief sought by the mother — thereby intending to leave the existing order unaffected except for the additional provision prohibiting disparaging remarks. However, we note that the unartfully written order entered October 5, 2016 failed to accurately implement the court's expressed intention to continue the visitation schedule unchanged because it erroneously stated that the parties had been sharing joint physical custody [FN2]. In fact, the prior order provided for primary physical custody with the mother and contained scheduled parenting time for the father that resulted in the child spending slightly more than one half of her time with the mother. Therefore, we modify the order to continue the prior custodial arrangement of joint legal custody and primary physical custody to the mother with the visitation schedule previously set forth in the October 2015 judgment of divorce.
Devine, J.P., Clark and Pritzker, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as awarded the parties joint physical custody; petitioner is awarded primary physical custody and the visitation schedule set forth in the October 2015 judgment of divorce remains in full force and effect; and, as so modified, affirmed.



Footnotes

Footnote 1:Family Court properly offered the parties the opportunity to submit written requests with regard to further proceedings following its appointment of the psychologist (see Matter of Thaxton v Morro, 222 AD2d 955, 957 [1995]). Inasmuch as the attorney for the child made no such request at trial, her argument that she should have been permitted to cross-examine the court-appointed psychologist is unpreserved for our review (see Matter of Julia N.-R. [Maria R.], 151 AD3d 867, 868 [2017]).

Footnote 2:Family Court's decision also incorrectly stated that the parties had shared custody "50/50."